## STUYVESANT INS. CO. v. JACKSONVILLE OIL MILL.

## GLOBE & RUTGERS FIRE INS. CO. v. SAME.

Circuit Court of Appeals, Sixth Circuit.
November 16, 1927.

Nos. 4847, 4848.

1. **Insurance** ⟜665(4)—Evidence held to support recovery on fire policies for loss of use and occupation of mill.

In action on fire policies, evidence *held* to present question of fact for jury, as to value of use and occupancy, and to support the verdict under instructions not objected to.

2. **Evidence** ⟜543(1)—That expert witness had never seen cotton seed oil mill held to affect only weight of testimony as to value of its use, and not its competency.

That a witness, answering a hypothetical question as to the value of the use of a cotton seed oil mill described, at a place and during a season described, had never.seen the mill, *held* to go only to the weight of his testimony, and not to its competency.

In Error to the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

Actions at law by the Jacksonville Oil Mill against the Stuyvesant Insurance Company and against the Globe & Rutgers Fire Insurance Company. Judgments for plaintiff, and defendants bring error. Affirmed.

See, also, 3 F.(2d) 1006 and 10 F.(2d) 54.

Bruce Barnett, of Kansas City, Mo. (Allen Hughes, of Memphis, Tenn., on the brief), for plaintiffs in error.

Wm. P. Metcalf, of Memphis, Tenn. (Collins & Houston, of Dallas, Tex., and Metcalf, Metcalf & Apperson, of Memphis, Tenn., on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Defendant in error, engaged at Jacksonville, Tex., in the manufacture of cotton oil and by-products (cake, meal, and linters), was insured by the respective plaintiffs in error against loss by fire as respects use and occupancy of buildings and machinery, in the aggregate sum of $23,400 ($10,000 in the Stuyvesant, and $13,400 in the Globe & Rutgers), for a term of one year ending August 15, 1923. On October 16, 1922, the buildings and machinery were so largely destroyed by fire as to entirely prevent operation from the last-named date until the end of the then current season, viz. March 31, 1923. By the terms of

the policies the insurers were liable "for not exceeding one hundred fifty ($150.00) dollars for each and every working day" between the date of the fire and March 31st following (in this case, 143 working days), it appearing that before that date the buildings and/or machinery could not with reasonable diligence be repaired, rebuilt, or replaced as before the fire. For such loss each insurer was liable in the ratio which the amount of its insurance ($10,000 and $13,400, respectively) bore to the aggregate amount of $23,400.

Reviewing the first trial, this court held that the policies were "open," as distinguished from "valued." 10 F.(2d) 54. On the second trial (the cases were tried together) plaintiff recovered against the Stuyvesant Company $9,166.67, and against the Globe & Rutgers Company $12,283.32, plus interest at 6 per cent. from April 3, 1923. The aggregate principal of the two judgments ($21,449.99) lacked 1 cent of representing recovery of $150 per day for the full 143 working days. This writ is to review those judgments.

In this court the alleged errors relied upon are:

(a) That there was no evidence to support a recovery of either $150 per day as earning capacity—the value of use and occupancy—or for the full period of 143 secular days, but that, as respects both of these features, the recovery was excessive. There is now no contention that the evidence would not sustain any recovery by plaintiff. Indeed, defendants would have no standing as to such claim, for the reason that motion to direct verdict for defendants, made at the close of plaintiff's testimony, was not renewed at the close of all the testimony. Hansen v. Boyd, 161 U. S. 397, 16 S. Ct. 571, 40 L. Ed. 746.

(b) That error was committed with respect to the admission of testimony for plaintiff.

[1] *As to insufficiency of evidence:* The scope of the enquiry is necessarily narrow. Defendants made no request for instructions to the jury. The court charged that the number of working days involved was 143, and that the maximum recovery permissible under the policies was $150 per day, and gave the maximum recovery upon the two policies in the same amounts as actually found by the jury. No exceptions were taken to the charge in any respect. If it is open to the defendants to raise here the question of the sufficiency of the evidence as to the value of use and occupancy, as respects either number of days or amount per day, it can only be because of the denial of motion for new trial, which contained, as one of its grounds, the allegation of lack of "evidence of any loss in or to the extent of the amount of the verdict, and the verdict in the amount in which it has been rendered is not supported by any evidence." The general rule is that the overruling of a motion for new trial is an exercise of discretion, which will not be reviewed. Counsel cite Pugh v. Bluff City Excursion Co. (C. C. A. 6) 177 F. 399, and Glenwood Co. v. Vallery (C. C. A. 8) 248 F. 483, as holding that whether the evidence is susceptible of any interpretation justifying the verdict is properly reviewable in the appellate court. To say the least, it is open to serious doubt whether upon the record here either of those cases is in point. Both those cases invoked the principle that the general rule relating to exercise of discretion does not apply where the verdict *is inconsistent on its face,*[1] or shows an abuse of power* on the part of the jury, thus making the court's obligation to grant a new trial a positive duty and not discretionary.

In the Pugh Case—an action for wrongfully causing the death of plaintiff's son—the jury found for the plaintiff, but assessed damages at $1, in the face of not seriously disputed facts that the son, at the time of his death, was 29 years old and in good health; that he was capable of earning, and at the time of his death had been earning, $20 per week; that plaintiff was almost entirely dependent upon her son and daughter, who contributed to her support. In the Glenwood Case the jury, in violation of instructions, found for an amount less than that which the uncontroverted evidence showed plaintiff was entitled to recover, if at all. The refusal of motion for new trial was such an abuse of discretion as to justify reversal of the judgment.

In the instant case there was explicit testimony submitted to the jury to the effect that plaintiff could have operated its mill for 143 days at a profit of $150 per day. Upon review of the denial of this motion for new trial, defendants are plainly not entitled to be heard upon criticisms that such conclusions or opinions of fact were based upon alleged fallacious assumptions and mistaken conceptions. Such considerations are addressed ultimately only to the weight or credibility of plaintiff's evidence, or to questions of competency or of legal effect. To illustrate: Defendants contend that the

---

[1] All italics ours unless otherwise stated.

value of the use and occupancy is to be separately determined *for each particular day*, and that the profit for the day *must* be determined solely with reference to the expense of the individual day's operation, including the market price of seed as compared with the market price of the oil and by-products *on the same day*.

We think this proposition utterly devoid of merit. The argument is that to hold the product until later in the season, when a better price can be obtained, is a purely speculative operation. Naturally enough, no authorities are cited in support of this contention. True, some of the witnesses spoke of holding products for better prices as a speculation. Such holding may well go to that extent, but clearly such holding as was assumed by these witnesses was not necessarily speculative, as distinguished from a reasonably prudent management of the business. There was competent testimony tending to show that the practice in question accorded with reasonably prudent management. There was no testimony to the contrary. It also appeared that the season of 1922–1923 was an unusually profitable one; that the season of 1921–1922 had been a poor year for manufacturers, some of them being driven out of business, but that in the season of 1922–1923 there was an abundance of seed and little competition in manufacture, and that the prices both of seed and of the finished product during practically the entire season were rising. Plaintiff's president testified:

"I was president of another mill, the Athens oil mill. I gave personal attention at both places. I lived at Athens. My principal office was there. Cotton seed was steadily advancing in price at the time of the fire. It continued steadily to advance until March, observing which I held back my sales—that is, a part of it—as much as I could for anticipated greater price. My judgment was good as to that. We frequently held the oil in the seed. The effect is the same, as to gain or loss, whether we hold back the seed and mill later and sell, or whether we convert into products and hold the products back for sale. We made much money at Athens that year, and *could have done the same* by operating at Jacksonville, *in the same way*."

More than one witness estimated the value of use and occupation at more than $150 per day; some as high as $250 to $300, or even higher. The court fairly submitted the question of the effect of holding seed for manufacture, or holding the products for sale,

in this language, to which no exception was taken:

"You are neither to estimate the plaintiff's damages for the loss of the use and occupancy of the mill upon profits to be realized by holding cotton seed or its products for future sale, or speculative purposes, nor, on the other hand, to rigidly hold the loss down to the actual market on the cotton seed it purchased and the products to be derived therefrom on the daily market, but rather you are to estimate its loss, if any, from the way a reasonably prudently managed corporation of its class and location would have conducted its business. You should take into consideration, from the evidence before you, how it did conduct its business and arrive at its loss, if any, from being deprived of the use and occupancy of the oil mill, from the actual facts as shown in the record. In other words, you are not to set up any arbitrary business standard to which plaintiff must rigidly adhere before it can recover; but you are to take the ordinary business policy of similar mills, similarly located, and the actual business policy of the plaintiff into consideration, in estimating its loss, if any, in so far as the evidence introduced enables you to do so."

It is also contended that the mill could not have run 143 days, from the fact that plaintiff's president testified that (presumably before the fire) he had had in mind 6,000 tons of seed *as a minimum for the season*. The mill crushed about 48 to 50 tons a day. But the witness also testified that "I could have got 10,000 tons; the seed were there, but could not say how many we could have gotten; but I had in mind the minimum of 6,000, and we could have gotten a great many more seed." We think that on this subject a question of fact for the jury was presented.

[2] The only alleged error in the admission of testimony which justifies mention relates to the submission and answer of hypothetical questions to several witnesses as to the value of use and occupation. The case of the witness Jones may be taken as fairly typical. Counsel say that this witness had never seen the mill. Objection was made upon the grounds that the question did not describe the mill, nor detail conditions in that section at the time in question, nor the cost of labor at that time in that section of the country, nor the price of cotton seed meal in that section during that season, nor the number of competitive mills, nor the local conditions as to marketing hulls and cake, and that the

witness had not shown himself qualified to testify as an expert. The question was:

"You will please take into consideration a four press cotton seed oil mill located at Jacksonville, Tex., on three lines of trunk railroads, drawing its seed from a number of counties surrounding Cherokee county, in which Jacksonville is located, in the season of 1922, beginning in 1922; consider that it was a mill with an ordinary daily capacity of 48 to 50 tons per day; that the operators of the mill were sufficiently equipped with finances to carry on the business for any amount of business that they might choose to undertake in that season; that the size of the cotton crop in the surrounding counties that year was 114,938 bales; that the crop was a good average crop for that territory; that competition was less keen that year than it had been in previous years; that the cost of labor was lower than it had been in previous years; take these things into consideration, along with the fact that there was an upward trend, from the opening of the cotton seed oil mill season, in the market for cotton seed products, and give us your opinion as to what was the reasonable value of the use and occupation of such a mill, so located, under those conditions, for the season of 1922–1923, meaning by use and occupancy the right and the opportunity to occupy the mill building, and use the mill machinery for conducting a cotton seed oil mill business."

The witness testified that he had lived at Memphis and had had 19 years experience in the cotton seed oil business, and that since 1913, and until after the period in question, he was for four years manager of the Buckeye Cotton Oil Company, and for seven years prior to that had run the two mills of that company at Macon, Georgia; also that cotton is grown in East Texas, and that there are oil mills there.

We think the objection without merit. The fact that the witness had not seen plaintiff's mill affects only the weight of his testimony. A hypothetical question is, as its name indicates, hypothetical. There was testimony to support each item asked by the question to be taken into consideration. The witness was plainly competent. The mill had already been described in testimony before the jury.

While the objections to hypothetical questions to other witnesses differ somewhat in detail from that just considered, we think there is nothing not covered by what has already been stated herein.

The judgment of the District Court should be affirmed.