EISENSON et al. v. HOME INS. CO.

EISENSON et al. v. COUNTY FIRE INS. CO.

Civ. Nos. 187, 188.

United States District Court
N. D. Florida, Marianna Division.

May 23, 1949.

Thomas Sale, Panama City, Fla., for plaintiffs.

Fisher, Fisher, Hepner & Fitzpatrick, Pensacola, Fla., for defendants.

## DE VANE, District Judge.

These suits are on two Business Interruption Insurance policies. Each policy is identical with the other and each policy insured plaintiffs for one-half the total losses sustained. These cases were consolidated for trial and this Memorandum Decision covers both cases.

The policies cover business interruption resulting from fire. Item I, in the sum of $12,000.00, covers (a) the net profit which is thereby prevented from being earned, and, (b) such charges and other expenses, including salaries of officers, executives, department managers, employees under contract and other important employees as must necessarily continue during a total or partial suspension of business, to the extent only that such charges and expenses would have been earned had no fire occurred. This Item also covers expenses of necessary heat, light and power, the cost of which is prevented from being earned during the time of total or partial suspension of business, because of a fire.

Item II, in the sum of $2,300.00, covers the insured's entire payroll expenses for a period of time not in excess of ninety (90) consecutive days immediately following the date of loss. This Item does not cover any portion of the salaries described in Item I. Each policy is in the amount of $7,152.00, which is $2.00 in excess of one-half the aggregate of Items I and II.

There are a number of issues presented by the pleadings and as each issue is stated it will be disposed of before passing to the next issue.

### 1. Are the Policies Open or Valued Policies?

Premiums were paid by plaintiffs upon the full amount of the liability provided for in each policy and plaintiffs vigorously contend that the policies are valued policies and that each defendant is liable to them for the full amount of the insurance stated in its policy. Defendants contend with equal vigor that the policies are open policies and that the extent of the liability thereunder is the actual losses suffered by plaintiffs covered by the policies.

Counsel for the respective parties were unable to cite to the court any case upon the precise issue presented. There are a few cases passing upon the extent of liability under policies providing for the payment of a fixed amount per day during business interruption, by fire, but these cases are of little value in determining the issue here before the court.

It is conceded by the parties that there is no law in Florida making insurance of this character valued policies as in the case of insurance upon buildings. It is, therefore, necessary to examine the language of the policies to determine the extent of the liabilities of the defendants. The policies are very specific in their provision that the liability thereunder covers "net profits which are thereby prevented from being earned," other expenses "to the extent only that such charges and expenses would have been earned had no fire occurred" and payroll expenses "which may continue during a total or partial suspension of business covering only to the extent necessary to resume the normal business of the insured with the same quality of service which existed immediately preceding the fire, and which would have been earned had no fire occurred." Similar language in a different type of use and occupancy policy was construed in Stuyvesant Insurance Company v. Jacksonville Oil Mill, 6 Cir., 10 F.2d 54, and on second Appeal, 6 Cir., 22 F.2d 515. This case holds that such policies are open policies. In these cases this

court, likewise, is of the opinion that the language of the policies are susceptible to no reasonable interpretation except that the policies sued upon are open policies and the court so holds.

## 2. The Effect of Alleged False Swearing in Proof of Loss.

In making proof of loss plaintiffs claimed net profits from the operation of business in the sum of $12,170.26; salaries of key employees, $6,600.00; and $2,408.08 as ordinary payroll expenses for ninety (90) days following the fire. The evidence submitted at the trial did not sustain in whole these items claimed in proof of loss. Each policy contained a provision to the effect that the "entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or subject thereof or the interest of the insured therein or in case of any fraud or false swearing by the insured relating thereto." Defendants contend that under this provision each policy is void, by reason of the overstatement by plaintiffs of the amount of loss suffered by them in their proof of loss to the Insurance Companies.

There might be some merit to this contention if the law has been definitely settled on the question as to whether these are open or valued policies. However, plaintiffs have contended throughout this case that the policies here sued upon are valued policies and had the court sustained them on this issue the matter contained in the proof of loss would have been largely immaterial. They did not, therefore, seek to perpetrate a fraud upon defendants in their proof of loss and they should not and will not be charged with that degree of false swearing that would void the policies. The evidence in the case does not sustain defendants' position on this issue.

## 3. The Effect of the Co-Insurance Clause in the Policies.

Each policy contains a co-insurance clause to the effect "that the assured shall at all times maintain insurance on Items I and II of this policy of not less than" 80% of the total losses insured against in case of fire, "and that failing so to do assured shall be an insurer to the extent of such deficit and in that event shall bear his, her or their proportion of any loss."

Counsel for defendants, by some process of mathematics which the court finds difficult to follow, contends that under this clause of the policies plaintiffs became an insurer for a substantial amount of the losses actually sustained by them, which must be deducted from the total losses sustained in determining the liability of each defendant.

The evidence in this case clearly shows, as the court will point out later, that the total losses sustained by plaintiffs to which these policies are applicable amounted to substantially less than the total maximum liability of defendants under the two policies. The proof, therefore, conclusively shows that plaintiffs maintained insurance on Items I and II of the policies in an amount not only equal to 80% of the total liability sustained by reason of the fire, but in excess of 100% of such liability. The court holds that under this showing plaintiffs do not become "an insurer" to any extent and that they are entitled to recover the full amount of losses sustained by them under the policies sued upon.

## 4. Liability Under Item I of the Policies.

As stated above, Item I insured against (a) net profits prevented from being earned by a fire. A fire occurred in the early morning of June 21, 1947. The fire resulted in such damage to the plant and equipment that it was necessary to totally suspend operation. The parties stipulated at the hearing that with due diligence the plant could have been put back into operation six months from the date of the fire. This definitely fixes, without controversy, the period for determining liability under Item I.

The policies provide that "the amount of net profits * * * shall be determined * * * by giving due consideration to the experience of the business before the fire and probable experience thereafter." Plaintiffs had been conducting the business covered by these policies for a little more than one year prior to the fire. In their proof of loss they claim total gross receipts

(gross volume of work taken in) for twelve-month period (June 1, 1946 through May 31, 1947) as $69,917.43; total operating expenses for the same period, $56,747.17; making net profits from operation in the sum of $13,170.26. It will be noted that this proof of loss is based upon a statement of gross volume of work taken in and is not based upon gross cash receipts and accounts receivable for the period.

Plaintiffs relied upon the information shown in the proof of loss, which was filed as an exhibit in the case, to support each item of loss covered by the policies. An auditor, engaged by plaintiffs, prepared the report. He was called as a witness and testified that, except for the amount shown as gross receipts, all the information in the proof of loss was taken from the books kept by plaintiffs. The gross receipts figures were furnished him by plaintiffs in the form of loose memoranda kept on the back of bank deposits and other slips of paper. He testified this loose memoranda did not represent cash receipts, but gross volume of work taken in by plaintiffs. He also testified he made no attempt to reconcile the very substantial difference between the gross volume of work taken in and cash receipts as shown by the books.

Plaintiffs maintained a satisfactory system of accounting with reference to all cash receipts and expenditures for the entire period of operation and they made the books of accounts available to an auditor for defendants and the report of this auditor was filed in evidence in this case. The accuracy of this report was not questioned by plaintiffs. This audit shows total cash receipts from the business in 1946 of $38,416.31; total operating expenses, less depreciation, $33,595.63; depreciation expenses (as per Income Tax Return), $882.50; and net profits, after depreciation, of $3,938.18.

This audit also shows for the year 1947 up to and including the date of the fire, total receipts in the sum of $28,711.29; total expenses, excluding depreciation, $29,188.94; depreciation expenses (as per Income Tax Return), $830.11; and a net loss of $1,307.76. The auditor for defendants also prepared and filed in evidence, a statement of income and expenses from June 1, 1946 to May 31, 1947, showing gross income of $61,160.61; total expenses, $54,663.65; depreciation expenses, $1,617.58; and net profits of $4,879.18.

Plaintiffs operated on a cash basis and made their Income Tax Returns on the same basis. Defendants filed in evidence the Partnership Returns of Income made by plaintiffs for the years 1946 and 1947. The year 1946 showed a total net income of $5,811.87. The return for 1947 is of little value in ascertaining the net profits due to the losses deducted in that year because of the fire.

The proof of gross receipts for the period shown in the statement attached to the proof of loss, is $8,756.82 in excess of the gross cash taken in during the same period. The difference is not satisfactorily explained by plaintiffs in this case. Upon examination by the court plaintiff, Abe Eisenson, testified that the accounts receivable were negligible. He was unable to state definitely the amount of such accounts, but he did testify that they in nowise approximated the $8,756.82 representing the difference between plaintiffs' claim of gross receipts and that shown by plaintiffs' books. The court, therefore, is unable to rely upon the statement submitted by plaintiffs in support of their proof as to the gross profits for the twelve-month period preceding the fire.

The policies provide that in determining the net profits the court shall not only take into consideration the experience of the business before the fire, but also the probable experience of the business thereafter. No showing was made as to the experience of the business after the resumption of business following the fire and the court is, therefore, limited in its determination of this issue to the evidence before it touching the experience of the business before the fire.

The evidence shows that $17,192.19 of the gross income for the period from June 1, 1946 to May 31, 1947, came from Eglin Field and that the Eglin Field contract was cancelled some time prior to the fire. No doubt, it was the cancellation of this contract that brought about the decrease in net profits during the latter months of 1947 preceding the fire. Defendants contend that the loss of the Eglin Field business and the poor showing made in 1947 should be

taken into account in determining net profits for the period involved in this case. But, as the court construes the brief filed by counsel for defendants no serious objections are advanced to the court's determining the net profits for the twelve-month period preceding the fire in an amount approximating the net profits shown in the statement of income and expenses shown by their auditor for the period from June 1, 1946 to May 31, 1947.

The court does not attach great significance to the loss of the Eglin Field business. Its loss may have stimulated plaintiffs to better things as adversities so frequently do. From the evidence adduced the court is of the opinion that $5,000.00 fairly represents the annual net profits of the business, one-half of which plaintiffs were prevented from earning by reason of the fire, and this figure will be used in determining the respective liabilities of defendants under the policies here sued upon.

Item I (b) insures against such charges and other expenses including salaries of officers, executives, department managers, etc., as must necessarily continue during a total or partial suspension of business to the extent only that such charges and expenses would have been earned had no fire occurred. The only amount claimed as representing salaries of officers, executives, etc., were the drawing accounts of plaintiffs. The business was operated as a partnership and as the sole owners of the business their withdrawals came out of profits and these withdrawals are included in the net profit figure. Therefore, nothing is allowed plaintiffs on this account.

The only evidence submitted with reference to the remaining charges and expenses covered by Item I (b) is that shown by the report of the auditor for defendants. These figures were taken from the books of plaintiffs and were not disputed by plaintiffs at the trial. They are summarized as follows:

| | |
|---|---|
| Taxes and Licenses | $ 775.74 |
| Rent | 675.00 |
| Insurance | 585.33 |
| Telephone | 120.00 |
| Lights, Heat and Power | 51.45 |
| Payroll Taxes | 49.50 |
| Social Security | 18.85 |
| Total | $2,275.87 |

These items as summarized above represent expenses incurred during the six months period and in the absence of other proof with reference thereto, $2,275.87 is allowed under this Item of the policies.

### 5. Liability Under Item II of the Policies.

Plaintiffs submitted no proof from which a definite determination may be made of the liability of the defendants under this Item of the policies and the evidence submitted by defendants must be used in determining this liability.

The audit made of plaintiffs' books by the auditor for defendants shows that during the three-month period $1,544.08 was paid to the employees. As there is no other proof in the record touching this Item the amount stated above is allowed.

### 6. Attorneys' Fees.

Defendants concede that the Florida Statute, Section 625.08, F.S.A. provides that attorneys' fees be allowed attorneys for plaintiffs in suits on insurance policies in the event of a recovery by plaintiffs. However, they contend that in this case no attorneys' fees should be allowed for the reason that prior to the institution of these suits defendants offered to pay plaintiffs the sum of $4,539.82 in full settlement of their liability under the policies. The contention fails for two reasons; first, the amount allowed in these cases is in excess of that offered by defendants, and; second, plaintiffs, in good faith, contended from the beginning down to and throughout the trial in these cases that the policies sued upon here were valued policies and that defendants were liable for the total liability stated in the face of the policies. They had a right to litigate this question, even though they have lost it in this court.

The testimony in these cases is to the effect that a reasonable attorney's fee to allow plaintiffs' attorney would be $100.-

00 in each case, plus 10% of the amount recovered. Therefore, $200.00, plus 10% of the amount recovered, making a total of $832.00, is allowed as reasonable attorney's fee in these cases. This amount will be equally divided between the defendants.

### 7. Premium Returns.

Defendants concede that if plaintiffs recovered an amount less than the total maximum liability fixed in the policies they are also entitled to a pro-rata return of premiums for the difference between the amounts they paid as premiums and the amount of the actual liability. Until the actual recovery amounts had been determined no premium calculation could be made and defendants are directed to now make such calculations and there will be incorporated in the Final Judgment entered herein the pro-rata return premium due by each defendant.

A separate Final Judgment will be entered against each defendant in conformity with this Memorandum Decision.