In re HOLMES LUMBER CO.

(District Court, N. D. Alabama, W. D. May 22, 1911.)

No. 146.

1. USURY (§ 57*)—USURIOUS TRANSACTIONS.

A company not being able to obtain a loan applied to a third person for a loan. He declined because he did not have the money, but agreed to procure the money from a bank and make himself liable for the debt on the company agreeing to pay him a specific sum per month for the trouble in procuring the money and for the sale of his credit. *Held*, that the transaction was not tainted with usury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 128, 129; Dec. Dig. § 57.*]

2. BANKRUPTCY (§ 316*)—MORTGAGEE OF BANKRUPT—ATTORNEY'S FEES.

A mortgagee, in a mortgage providing for an attorney's fees in case legal services become necessary to protect his interest, filed a petition for leave to foreclose the mortgage after the bankruptcy of the mortgagor, and the trustee in bankruptcy filed a petition for leave to sell free from liens. *Held*, that the mortgagee was entitled to an allowance of an attorney's fee for the filing of his petition and for representation under the trustee's petition.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

3. BANKRUPTCY (§§ 223, 368*)—SALE OF PROPERTY FREE FROM LIENS—COMMISSIONS—LIABILITY.

The bankruptcy act as amended, authorizing payment of commissions from the proceeds of the sale of incumbered property of a bankrupt, ap-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plies only to cases in which the bankruptcy court rightfully exercised its jurisdiction to sell free from liens or where the lienholder consented to a sale, but where the unincumbered property brought largely less than the amount of the liens on it, the bankrupt estate must pay the commission of the referee and the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. §§ 223, 368.*]

4. BANKRUPTCY (§ 316*) — ATTORNEY'S FEES — COLLECTION OF INSURANCE MONEY.

Where insurance under the same policies was partly due a trustee in bankruptcy and partly due lienholders of the bankrupt, the trustee with the consent of the lienholders properly collected the insurance and it was proper to allow him an attorney's fee and to charge against the lienholders a pro rata part thereof.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

5. BANKRUPTCY (§ 188*)—LIEN OF MORTGAGE.

A corporation engaged in the business of cutting and sawing timber, executed a mortgage to procure money to enable it to continue business and the mortgagee knew the facts. The mortgagor had the right under the mortgage of ingress and egress for the purpose of cutting timber. *Held*, that the mortgagee, as against the trustee in bankruptcy of the mortgagor, lost his lien on timber cut and sawed and commingled by the mortgagor with lumber manufactured from timber cut from unmortgaged premises.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 188.*]

6. BANKRUPTCY (§ 316*)—INSURANCE OF MORTGAGED PREMISES—RIGHTS OF MORTGAGEE.

A mortgagor engaging in the business of cutting and sawing timber, executed a mortgage to procure money to enable it to continue the business and the mortgagee knew it. The mortgagor had the right under the mortgage of ingress and egress for the purpose of cutting the timber, and the mortgagor was required to insure the mortgaged property. The mortgagor obtained policies covering the mortgaged property and other property. *Held*, that the mortgagee was not entitled to insurance on property on which he had no lien as against the trustee in bankruptcy of the mortgagor.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

In the matter of the bankruptcy of the Holmes Lumber Company, a bankrupt. Petitions of P. J. O'Leary and Jefferson County Savings Bank to review orders of the referee. Modified and confirmed.

G. W. Yancey, for petitioner O'Leary.

George Huddleston, for petitioner Jefferson County Savings Bank.

A. Leo Oberdorfer, for trustee in bankruptcy.

GRUBB, District Judge. This cause is heard upon a petition to review an order of the referee upon the petitions of one O'Leary, who had a second mortgage on certain assets of the bankrupt sold under an order of the bankruptcy court free from liens, and of the Jefferson County Savings Bank, which held a first mortgage upon the same property. The property sold for materially less than the amount due on both mortgages. Certain questions of priority and of allowance of costs and attorney's fees arose on distribution, and are presented by the petitions. The trustee has an interest in some of the questions and appeared in the hearing. The questions are enumerated in the certificate of the referee, and are decided here seriatim.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

First. Without reference to the agreement between the Jefferson County Savings Bank and E. V. Smith, attached to petitioner's attorney's brief, I am convinced from the evidence that the $1,800 was a proper credit on the bank's mortgage debt, because the parties so intended.

[1] Second. I think it clear that the bank construed its loan to have been made to Smith & Kyser. However, in determining whether the agreement by bankrupt to pay Smith & Kyser $75 a month to procure the loan, tainted the transaction with usury, the transaction between Farrior, representing the bankrupt, on the one hand, and Smith & Kyser, on the other, is the one to be construed. Upon examination, it appears to have been a loaning, to the bankrupt, of the credit of Smith & Kyser with the bank, to enable it to obtain the money it could not otherwise have obtained. The transaction between Farrior and Smith & Kyser is properly described in the language of the opinion in Brown v. Harrison, 17 Ala. 779, as follows:

"The transaction does not purport to be a loan. The contract is ostensibly a contract for compensation for the trouble and inconvenience of raising money to meet the debt of another."

The bankrupt could not obtain the money by itself, and Smith & Kyser, when applied to by Farrior to make it a loan, declined, assigning as a reason that they didn't have the money. When requested by Farrior to raise it from one of their banks they agreed to and did do so, by making themselves liable for the debt. The compensation was given them for their trouble in raising this money and for the sale of their credit to the bankrupt in order to secure the money from the bank, and not for the use of their own money loaned by them to the bankrupt. The cases cited in the referee's certificate are not to be restricted to commission merchants, but extend to all classes of persons who come within the principle laid down in those cases. The record fails to show that the agreement to pay $75 per month was a device to evade the usury laws, or that the bank that made the loan was privy to it.

[2] Third. The bank filed a petition to be allowed to foreclose its mortgage. The trustee filed a petition to be allowed to sell free from liens. The mortgage provided for an attorney's fee to the mortgagee in case legal services became necessary to protect its interests. I think the bank is entitled to the allowance of an attorney's fee for filing its petition for leave to foreclose and for representation under the trustee's petition to sell free from liens. The litigation under the latter related to the allowance of the credit of $1,800, and not to the issue as to whether there was an equity for the trustee. Under the facts, I do not think the bank entitled to any allowance for the litigation so far as it related to the allowance of the credit. I think $75 would be a reasonable allowance for such other services as were necessarily incurred to protect the interests of the mortgagee, viz., the filing of the petition for leave to foreclose, and the services rendered under the petition of the trustee to sell free from liens, so far as they came within the scope of the character of services for which the mortgage, by its terms, provided for compensation.

[3] Fourth. The bankruptcy court has jurisdiction of all property in the possession of the bankrupt at the time of the filing of the petition, including that on which there are liens. It has the right to sell free from liens, to preserve the equity for the estate. It has the right to determine whether such equity exists for that purpose. If there is no equity, the property should be turned back to the lienholder. In that event, there is no reason for the administration of the property through the bankruptcy court, and for the charge against the lienholder of referee's and trustee's commissions for handling the proceeds of the sale of the property. It is difficult in many cases to determine the existence of an equity in advance of sale. However, in cases in which, upon a sale in the bankruptcy court, the property fails by a large sum to satisfy the liens upon it, it is at least prima facie evidence that the bankruptcy court should not have administered it, and in such cases it seems to me that the estate should pay the commissions of the referee and the trustee, and not the lienholder. I think the amendment to the act, so far as it may be construed to authorize payment of such commissions from the proceeds of the sale of the incumbered property, can only apply to cases in which the bankruptcy court rightfully exercised its jurisdiction to sell free from liens, or where the lienholder consents to such sale. In this case there was no consent, and the property brought largely less than the amount of the liens upon it. A contrary rule would not only be unjust to the lienholder, but would put a premium upon the taking possession of incumbered property by the officers of the bankruptcy court for the purposes of administration.

Fifth. The referee properly permitted the bank, which was the legal owner of the mortgage, to collect the entire balance due on it. Smith and Kyser are the only persons interested, and they make no objection to such payment.

[4] Sixth. As the insurance was partly due the trustee and partly due the lienholders, and, under the same policies, it was proper for the trustee to collect it, and the lienholders consented to it. It was therefore proper to allow the trustee's attorney a fee, and to charge against the lienholders a pro rata part thereof. Inasmuch as the trustee's attorney would have had the same work to undergo on behalf of the trustee in any event, I believe it fair not to increase the allowance so far as it is a charge against the lienholders. The referee may exercise his discretion to allow the attorney for the trustee the pro rata part of the increase, which he deemed reasonable, out of the assets of the estate.

[5] Seventh. I think it reasonably clear from the record that the mortgagee, O'Leary, was aware at the time he made the loan, secured by the mortgage in question, that the bankrupt was cutting and sawing the timber, which, while standing, constituted part of his security, and that it was contemplated by him that this should continue to be done after the execution of the mortgage. The mortgage was given by the bankrupt to raise money to enable it to continue its operations as a going concern; and the mortgagee, O'Leary, knew this. The recitals in the description of the lands conveyed in the mortgage state

that the mortgagor had the right of ingress and egress for the purpose of cutting the timber. This being true, it is clear the mortgagee would lose his lien upon timber cut and sawn and commingled by the mortgagor with lumber manufactured from timber cut from unmortgaged lands.

[6] The mortgagor's contract with mortgagee was to insure the property covered by the mortgage lien and no other. The inconvenience of separating his insurance in different policies probably induced him to insure in one policy property covered by the mortgage lien and property not so covered. His so doing could not avail to entitle the mortgagee to the insurance on property on which he had no lien as against the right of the trustee. The cases cited in the certificate of the referee support his conclusion in this respect. Smith v. Continental Ins. Co., 108 Iowa, 382, 79 N. W. 126; Palmer's Sav. Bank v. Ins. Co. of N. A., 166 Mass. 189, 44 N. E. 211, 32 L. R. A. 615, 55 Am. St. Rep. 387; Wilcox v. Nat'l Ins. Co., 81 Minn. 478, 84 N. W. 334; Washington Nat. Bank v. Smith, 15 Wash. 160, 45 Pac. 736; Walls v. Helfenstein, 28 Wis. 632.

The order of the referee will be confirmed, except in relation to the amount of the attorney's fee allowed the bank, which will be reduced to $75; and as to the deduction of commissions for the trustee and referee from the proceeds of the sale of the incumbered property.