## Spangler, Trustee, Appellant, *v.* Union National Mount Joy Bank

Argued November 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John L. Hamaker,* for appellant.

*Harris C. Arnold,* with him *John A. Coyle,* for appellee.

OPINION BY CUNNINGHAM, J., January 29, 1937.

The contest out of which this appeal arose is over the application of the sum of $751.56, now in the hands of the defendant bank and representing damage by fire to certain personal property. It was paid to the bank by the insurance companies which had insured both the buildings and personal property upon a farm mort-

gaged by the owner, now a bankrupt, to the defendant, and is claimed by the insured's trustee as a part of the bankrupt's estate and by the bank as mortgagee under certain provisions of the policies. The action, in assumpsit, was disposed of in the court below upon a case stated and resulted in a judgment in favor of the bank. The insured's trustee has appealed from that judgment.

These material facts are set out in the case stated: Harold B. Endslow owned a farm with buildings and improvements thereon, situate in Rapho Township, Lancaster County, Pennsylvania. On April 22, 1926, he executed a bond in the principal sum of $7800.00, secured by a mortgage upon his farm, to the appellee, the Union National Mount Joy Bank. This mortgage, which was recorded when executed, by its terms provided that it was given as collateral security for the payment of all notes or indebtedness of the mortgagor to the mortgagee which then existed or might thereafter arise at any time prior to the satisfaction of the mortgage. By September 30, 1934, the date of the fire, Endslow was indebted to the bank on various notes totalling $6,795. At the time of the fire Endslow was insolvent; on October 13, 1934, he was adjudicated a voluntary bankrupt and J. Barr Spangler, appellant herein, was duly elected and qualified as trustee.

More than four months prior to the filing of the petition in bankruptcy, Endslow obtained fire insurance covering the buildings and personal property on his farm in a total sum of $15,000, prorated equally among four companies. In the language of the case stated, he "caused to be endorsed" on each policy a Standard Union Mortgage Clause, providing that "Loss or damage, if any, under this policy, shall be payable to Union National Bank, Mount Joy, Pa., as mortgagee or trustee as interest may appear......" and "delivered the policies so endorsed to the bank as security." The fire damaged both the buildings and the personal prop-

erty on the mortgaged premises. In an adjustment, participated in by Endslow, representatives of the insurance companies and of the mortgagee, it was agreed that the total loss should be fixed at $6,751.56, apportioned in the ratio of $6,000 as loss on buildings and $751.56 as loss on personal property.

Prior to the bankruptcy of Endslow, namely on October 5, 1934, the bank, having entered judgment on the bond accompanying the mortgage, issued writs of fi. fa. upon it and another judgment and caused a levy to be made on the farm and personal property of Endslow. All proceedings under these writs were, however, stayed by the bankruptcy proceedings and consequently are not material to the present controversy.

As a result of the adjustment, the insurance companies paid the total amount of the loss—$6,751.56— to the defendant bank. Both parties agree that the bank as mortgagee is entitled to apply the $6,000, representing the loss on buildings alone, to the payment of the mortgage debt.

Under this state of facts, the bank claims it is entitled to the entire proceeds of the policies, including the loss on the personal property, by virtue of the fact that it was named as mortgagee in the standard union mortgagee clauses of the policies.

A majority of the members of this court are of opinion that the bank is not entitled to retain the proceeds of the insurance upon the personal property merely by reason of the presence of the mortgagee clauses in the policies and its possession of the policies at the time of the fire. The question here raised was decided in *Clarke & Cohen v. Real, to use of Strouds-burg National Bank*, 105 Pa. Superior Ct. 102, 159 A. 454, in which an allocatur was refused. In that case the proceeds of fire policies, which included loss both on buildings and personal property, were claimed by an alleged mortgagee bank, and also by Clarke &

Cohen, assignees of the mortgagor. The policies contained a "loss payable" clause in favor of the bank which clause was expressly limited to loss on buildings. The lower court, however, held that the bank was entitled to the loss on personalty by virtue of another clause in the policy, referred to as clause "A," which was the union or standard mortgage clause. In holding that this clause gave a mortgagee no rights to losses on personal property covered by the policy, KELLER, J., (now P. J.) said (p. 114):

"The standard mortgagee clause covers and relates only to insurance on real property, or personal property so annexed to the real estate as to be bound by a mortgage on the real estate. This is apparent from the language of the clause itself as well as the provision of the standard policy authorizing it, (Act of May 17, 1921, P. L. 682, p. 737), and is clearly set forth by JUDGE KEPHART in the opinion in *Knights of Joseph B. & L. Assn. v. Mechanics Fire Ins. Co.*, supra, [66 Pa. Superior Ct. 90] p. 96; and by Judge HEAD in *Bell Co. v. Monroe Hotel Co.*, 73 Pa. Superior Ct. 460, 463, 464; the latter saying: 'It appears from the affidavit of defense that some of the policies which contained the rider clause referred to [that is, the standard mortgagee clause] were written to protect the mortgagor against loss on personal property, wearing apparel, and the like. The amount of premium that would be owing for such insurance bought no protection for the mortgagee because such property was outside the mortgage.' See also, *Wilcox v. Mutual Fire Ins. Co.*, 81 Minn. 478; 84 N. W. 334."

This result would seem to follow necessarily from the very terms of the clause itself, providing, as it does, that any loss shall be payable to the mortgagee "as *his interest* may appear," his only interest as mortgagee being in the real estate covered by the mortgage.

In *Knights of Joseph B. & L. Assn. v. Mechanics'*

*Fire Ins. Co.,* 66 Pa. Superior Ct. 90, the question was whether the plaintiff, mortgagee under a standard mortgagee clause had given notice within a reasonable time of a change in ownership of the property. Prior to the fire there had been a foreclosure. Speaking of the mortgagee clause in the policies this court stated, (p. 96) : "This mortgagee clause, when given, contemplated changes in title, ownership and possession that necessarily follow the ordinary foreclosure proceeding on a mortgage. It was the mortgagee's interest, through these various changes, that was being protected under the agreement, and the damage in that protected interest is now being sued for."

In *Bell Co. v. Monroe Hotel Co.,* 73 Pa. Superior Ct. 460, plaintiff, an insurance brokerage company, sued the defendant, mortgagee under a standard mortgage clause, to recover premiums alleged to have been advanced by it over a period of years. Plaintiff's statement of claim was held insufficient because it did not aver that plaintiff had actually paid the premiums to the insurance companies. The court pointed out (as quoted in the Clarke case, supra) that premiums paid on insurance covering personal property "bought no protection for the mortgagee because such property was outside the mortgage."

The authorities bearing directly on this point in jurisdictions other than Pennsylvania, are neither numerous nor recent, but all of them, save one, sustain the conclusion of this court in the Clarke case, supra.

In *Wilcox v. Mutual Fire Ins. Co. of Minnesota,* 81 Minn. 478, 84 N. W. 334, cited in the Clarke case at page 114, plaintiff, as mortgagee, claimed the proceeds of a loss covering personal property as well as real estate, under a clause making the loss payable to him as his interest might appear; he also claimed the personal property proceeds by an assignment from the insured, after loss. The court held that he could

not recover, as mortgagee, any of the loss resulting from destruction of the personal property, and that plaintiff got nothing by the assignment, as the insured had made a settlement with the company prior to the assignment, leaving nothing to assign.

In *Washington Natl. Bank v. Smith*, 15 Wash. 160, 45 Pac. 736, it was held that a mortgagee of a mill property, under a fire policy containing a loss payable clause as her interest as mortgagee might appear, had no right to the proceeds of insurance covering the machinery in the mill, where such machinery was personalty.

The case of *In re Holmes Lumber Co.*, 189 Fed. 178, is one in which the mortgagor insured property covered by the mortgage lien and also other property not so covered. The court decided that the mortgagee was not entitled, as against the trustee in bankruptcy of the mortgagor, to insurance covering other property of the mortgagor than that covered by the lien of the mortgage, citing cases, (p. 182), including the Wilcox case, supra.

In *Imperial B. & L. Assn. v. Aetna Ins. Co.*, 166 S. E. 841, 113 W. Va. 62, where the insured by mistake executed a mortgage to the mortgagee on a house and lot not owned by her, the court held that the mortgagee, under a standard mortgagee clause contained in policies insuring the mortgaged premises, could not recover at all as it had no interest in the property insured.

In *Collins v. Lumbermen's Ins. Co. of Phila., Pa.*, 162 Wash. 1, 297 Pac. 748, the court concluded that the assignee of a mortgagee under policies of fire insurance containing mortgage riders, did not acquire any rights by virtue thereof, to the insurance on personal property on the mortgaged premises.

In *Colby v. Parkersburg Ins. Co.*, 37 W. Va. 789, 17 S. E. 303, the mortgagee claimed the proceeds aris-

ing from the loss on personal property, under a loss payable, as his interest as mortgagee might appear, clause, although the mortgage covered real estate and fixtures only. The mortgagee also claimed the personal property proceeds by an assignment, before loss, and a delivery of the policies. It was pointed out (p. 305) that a delivery of the policy to the mortgagee did not necessarily show an assignment but was an equivocal act because the mortgagee would ordinarily be entitled to possession of the policies. This case was followed for the proposition that the mortgagee is entitled to personalty losses in the case of *Bentley v. Standard Fire Ins. Co.*, 40 W. Va. 729, 23 S. E. 584, where, however, there was a clear assignment of the entire policy, with the consent of the company, to the mortgagee.

In 26 Corpus Juris at page 441 the rule applicable to the allocation of the proceeds of fire insurance as between mortgagor and mortgagee is stated as follows: "A policy payable to a mortgagee as his interest may appear does not entitle the mortgagee to the proceeds of insurance not covered by the loss payable clause; and if the policy covers property not mortgaged as well as mortgaged property, the mortgagee is entitled only to such portion of the proceeds as represents the loss to the mortgaged property." See, also, Cooley's Briefs on Insurance, 2d ed. p. 6289.

As none of the insurance companies raised any question as to its liability but paid the loss as adjusted, we are not now concerned with the other provisions of the standard mortgage clause.

A further question has been injected into this case by several statements in the opinion of the learned president judge of the court below which are challenged by the appellant as not being supported by the contents of the case stated. One sentence in the opinion reads: "The defendant bank claims that this sum

of $751.56 is to be applied on their claim against End-slow, this claim being made under the above mentioned collateral mortgage *and under assignment of the insurance policies* under which the moneys were paid." Again, at the close of the opinion this language appears: "Indisputably the date of the *assignment* of the policies was more than four months prior to the bankruptcy and therefore the *assigned* policy is valid as against the claim of the trustee in bankruptcy." (Italics supplied). We are unable to find anything in the case stated which would justify a court in concluding that Endslow made any "assignment" of any of the policies to the bank, either before or after the loss occurred.

In our discussion of the facts appearing from the case stated, we have already quoted from the only averment upon which these statements of the court below could possibly be based. That averment appears in a supplemental stipulation and reads, in full: "(b) Endslow caused the said clauses making loss if any payable to the bank as its interest might appear, to be endorsed thereon and delivered the policies so endorsed or caused them to be delivered to the bank *as security,* all more than four months prior to the filing of the petition in bankruptcy, and the bank continued to hold the policies until it received payment thereunder." (Italics supplied)

As we read the above paragraph, there is nothing in the phrase "as security" which indicates that it was intended by the parties to mean anything more than that the policies were to be held by the bank, as the party named in the mortgagee clause and therefore entitled to hold them as security for its interest, as mortgagee, in the real estate covered by the mortgage.

The mere fact that the policies, containing standard union mortgagee clauses, were delivered to and were in the possession of the mortgagee, is of no particular

significance. This is so because, as mortgagee, it was entitled to possession of the policies. It is the usual practice for the mortgagee to retain possession of insurance policies containing riders in his favor. In *Clarke & Cohen v. Real, to use of Stroudsburg National Bank,* supra., the mortgagee bank, as here, claimed to be entitled to the proceeds of insurance covering the personal property by reason of an assignment of the entire policy, made by the insured, after loss, as collateral for the entire mortgage obligation. It was there stated (p. 112): "The delivery of the policy to Stroudsburg National Bank would not, of itself, amount to such an assignment or appointment, for as payee of the insurance on the building, under the loss payable clause limited to the insurance on the building, the bank had a right to the custody of the policy, and delivery of it to the bank on that account would not enlarge the rights of the bank so as to authorize it to collect the proceeds of insurance on the personal property and apply it to its loans against the insured...... It is enough to hold that mere delivery of the policy to an appointee or payee under a limited loss payable clause, does not authorize the latter to hold it beyond the terms of the appointment." The same reasoning applies in the present case for although the loss payable clause was not expressly limited to the loss on buildings, it was limited to the mortgagee's interest as such.

Ordinarily, facts which are not distinctly or expressly agreed upon in a case stated must, on appeal, be taken as not existing: *Shoener v. County of Schuylkill,* 107 Pa. Superior Ct. 114, 163 A. 319, and cases there cited. There are, however, precedents for remitting the record in actions based upon cases stated for further proceedings: *Hebron et al. v. Magda,* 280 Pa. 508, 124 A. 674; *Smith v. Bloomington Coal Co.,* 282 Pa. 248, 127 A. 627; *Studebaker Sales Company v. Nehaus,* 103 Pa. Superior Ct. 114, 158 A. 283.

In view of the positive statements of the court below, to which we have referred, we have concluded to reverse the judgment appealed from and remit the record to afford the bank an opportunity to show, if it can, that there was an "assignment" of the policies to it. Unless the bank can show something more than the mere delivery of the policies to it, as mortgagee, and its possession of the policies at the time of the loss, the appellant is entitled to a judgment in his favor.

We may add, by way of reply to the suggestion of counsel for the bank that appellant cannot maintain this action against it but should sue the insurance companies for wrongful payments, that we think the present action was properly brought against the bank as an action in assumpsit for money had and received by it which appellant claims belongs to him: *McAvoy & McMichael v. Com. Title Ins. & Trust Co.*, 27 Pa. Superior Ct. 271; *The Greenwich Bank v. Commercial Banking Corp.*, 85 Pa. Superior Ct. 159, and cases cited at page 163, and *Hering v. Donato*, 93 Pa. Superior Ct. 9.

Judgment reversed and record remitted with a procedendo.