186 So.2d 317 (1966)
The EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Ltd., Appellant,
v.
ROYALS FARM SUPPLY, INC., Appellee.
FIDELITY PHENIX INSURANCE COMPANY, Appellant,
v.
ROYALS FARM SUPPLY, INC., Appellee.
NETHERLANDS INSURANCE COMPANY, Appellant,
v.
ROYALS FARM SUPPLY, INC., Appellee.
NEW YORK UNDERWRITERS INSURANCE COMPANY, Appellant,
v.
ROYALS FARM SUPPLY, INC., Appellee.
SOUTHERN GENERAL INSURANCE COMPANY, Appellant,
v.
ROYALS FARM SUPPLY, INC., Appellee.
Nos. 5778-5782.
District Court of Appeal of Florida. Second District.
May 11, 1966.
Rehearing Denied June 2, 1966.
*318 Law Offices of George J. Baya, Miami, for appellants.
Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee.
WEHLE, VICTOR O., Associate Judge.
Summary judgment was entered for the plaintiff in seven suits consolidated for trial and involving similar insurance policies *319 issued by the seven defendants on real and personal property against which the plaintiff held three mortgages totaling over $90,000.00. The insured property, a building and its contents in Immokalee owned by Horseshoe, Inc., a Florida corporation, and used as a restaurant, bar, package store and apartment, was destroyed by fire on July 10, 1962. It was insured by seven different companies for various sums between $4,000.00 to $5,000.00 on the building and $2,000.00 to $2,500.00 on the contents, which policies totaled $30,000.00 on the building and $15,000.00 on the contents.
The owner of the building made no claim on the policies and within sixty days of the fire claims were made by the plaintiff as mortgagee.
The plaintiff and the insurers engaged in lengthy negotiations as to the filing of proofs of loss and as to the proposed types of assignment of the various mortgages to the insurers upon payment of the plaintiff's claims. Under the policies, the insurers had sixty days after they were furnished proof of loss to pay any claims and would not be liable for interest until after the sixty days. Hanover Fire Ins. Co. v. Lewis, 28 Fla. 209, 10 So. 297. The plaintiff claimed that filing proof of loss was waived by an agent of the insurers on September 20, 1962, although the plaintiff did later file a proof of loss on February 19, 1963.
The plaintiff and the insurers could not agree on the terms of the filing of proofs of loss nor on the terms of the assignments of the mortgages. On March 6, 1963, the insurers for the first time advised the plaintiff of their contention that the mortgage clauses of the policies did not insure the mortgages as to the contents of the building, but only as to the building itself.
The plaintiff for many months had been demanding payment and threatening suit. No firm offer was made by the insurers until July 3, 1963, when they offered the plaintiff's attorney "to pay the total sum of $30,000.00 to your client" upon the execution of certain assignments of the various mortgages. The plaintiff filed suit on July 26, 1963.
The Court granted summary judgment in favor of the plaintiff for principal sums totaling $30,000.00, interest of $3,364.14 from November 20, 1962 (sixty days after the alleged waiver of proof of loss), attorney's fees totaling $3,700.00 and costs totaling $140.00, and later an individual final judgment against each insurer for its share of these sums. The insurer-defendants assign as error the allowance of interest and the award of attorney's fees and Court costs. The plaintiff cross-assigns error in the ruling that the mortgage clauses in the policies covered the mortgagee solely on its interest in the building and not on its interest in the contents. We shall first consider the cross-assignment.
Each policy stated on the first page "Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to" the mortgagee. (Emphasis supplied.) The renewal certificates on the policies and the title endorsements thereto, after describing the insurer's right under subrogation, concluded with the following statement:
"The above Mortgagee Clause DOES NOT apply to personal property." (Emphasis as in the original policies)
The plaintiff's mortgages covered both the real property and the building contents and the plaintiff claims that, under the circumstances, any ambiguities in the policies should be construed against the insurers and thereby entitle the mortgagee to recover for the contents loss as well as the building loss.
If the policy provisions were ambiguous, the plaintiff would be correct in *320 its contention, but we find no ambiguity in the policies. The policies obviously did not extend the contents insurance for the benefit of the mortgagee and the trial Court properly denied recovery by the mortgagee under the contents clause. Clarke v. Real, 105 Pa.Super. 102, 159 A. 454; Spangler v. Union National Mount Joy Bank, 125 Pa.Super. 31, 189 A. 541; Miller v. Gibbs, 108 App.Div. 103, 95 N.Y.S. 385; 18 Fla.Jur. 91; 5 Appleman Insurance Law & Practice 572.
In so ruling, we are not passing upon the possible right of the mortgagee to have secured from the insured an assignment of the insured's right to collect on the contents of the building, nor upon the possible right of the mortgagee to have instituted a claim in the name of the insured for the benefit of the mortgagee on such contents coverage, as no attempt appears to have been made by the mortgagee to proceed under either of these theories.
The liability of the insurers for interest on the $30,000.00 awarded the plaintiff is vigorously disputed. The insurers claim that formal proof of loss was not filed until February, 1963, and that, therefore, interest at the most should only be computed from sixty days thereafter, whereas the trial Court allowed interest from November 20, 1962.
The plaintiff claims a waiver of proof of loss by an agent of the insurers as noted in a letter from the plaintiff's attorneys to the agent on September 20, 1963.
An insurer may waive the giving of formal proofs of loss, 17 Appleman Insurance Law and Practice, 552, 559, and numerous authorities cited therein. No consideration is necessary to support such waiver, 17 Appleman 555. Such a waiver may be made by any officer or agent who has the power to accept proofs of loss and to deal with the insured in settlement of a claim, 17 Appleman 558, and such waiver may be by parol, 17 Appleman 569, 570. A waiver so made is irrevocable, Bankers Fire & Marine Insurance Co. v. Draper, 242 Ala. 601, 7 So.2d 299.
The trial Court correctly found that such waiver had been made and was effective and that, therefore, the plaintiff was entitled to interest from November 20, 1962.
The insurers now claim that the plaintiff actually filed a proof of loss in February, 1963, and that this formal proof of loss should establish the date of proof of loss so that interest would commence only after sixty days from such filing. Similar contentions were considered and denied in Warshawky v. Anchor Mutual Fire Ins. Co., 98 Iowa 221, 67 N.W. 237, and Crouch v. Franklin National Ins. Co., 104 W. Va. 605, 140 S.E. 681, which cases hold that an insured does not waive a waiver of proof of loss by thereafter actually furnishing such proof of loss.
The insurers further claim that by offering to settle for $30,000.00, the amount for which they were ultimately held liable, they had avoided liability for interest after such offer. This would be so if the insurers had actually paid the $30,000.00 either to the plaintiff or into the Registry of the Court, but the mere offer unaccompanied by payment does not terminate the liability for interest. Laws v. New York Life Ins. Co., 81 F.2d (5 C.C.A.) 841.
The final question to be determined is the liability of the defendants for attorney's fees of the plaintiff where the principal amount awarded the plaintiff is substantially equivalent to what the defendants had previously offered.
In many states, attorney's fees are awarded to the insured only if the refusal to pay by the insurance carrier was "in bad faith" or "vexatious and without reasonable cause." Vance on Insurance, 46.
*321 The Florida Statute does not contain such provisions, but merely provides that upon the rendition of a judgment or decree against an insurer in favor of an insured or a named beneficiary, the trial Judge shall award a reasonable attorney's fee against the insurer and in favor of the insured or beneficiary. Florida Statutes 1965, § 627.0127, F.S.A. This Statute has been interpreted as conferring upon the beneficiary an affirmative statutory right to recover reasonable attorney's fees even though payment was contested in good faith and upon reasonable grounds. Pacific Mutual Life Insurance Co. of California v. McCaskill, 126 Fla. 82, 170 So. 579, 582.
It is true that ultimately the insurance companies offered to pay the plaintiff $30,000.00 without interest. This offer was not made until July, 1963, almost one year after the fire loss and only after repeated demands and threats of suit by the plaintiff's attorneys. Even if good faith were an element which would relieve companies from liability from attorney's fees under the Florida Statutes, we find that such good faith was not shown in this cause. An undue delay in offering to pay the amount due under an insurance contract amounts to a wrongful withholding and justifies an award of attorney's fees. Salter v. National Indemnity Company, Fla. App., 160 So.2d 147. See also Eisenson v. Home Insurance Company, D.C., 84 F. Supp. 41, where the insured claimed an amount substantially in excess of the amount ultimately awarded and it was held that the insured was entitled to an attorney's fee, as it had contended for the larger amount in good faith and it had a right to litigate this question even though it lost in the trial Court.
The action of the trial Court in entering the summary final judgment in the consolidated cause and the individual final judgments in the separate causes is affirmed.
ALLEN, C.J., and LILES, J., concur.