919 So.2d 491 (2005)
MERCURY INSURANCE COMPANY OF FLORIDA, Appellant,
v.
Cletus COOPER, Appellee.
No. 3D04-1434.
District Court of Appeal of Florida, Third District.
November 23, 2005.
Rehearing and Rehearing Denied February 15, 2006.
Alvarez, Sambol, Winthrop & Madson, and Griffith J. Winthrop, III and Julianne J. Flynn, Orlando, for appellant.
Langbein & Langbein, and Evan J. Langbein and Richard A. Friend, Miami, for appellee.
*492 Before WELLS, SHEPHERD, and CORTIÑAS, JJ.
Rehearing and Rehearing En Banc Denied February 15, 2006.
CORTIÑAS, Judge.
The plaintiff, Mercury Insurance Company of Florida ("Mercury"), appeals an order granting the insured/defendant, Cletus Cooper ("Cooper"), attorney's fees pursuant to Section 627.428, Florida Statutes (2004).
In November 2002, Cooper rented a van, which collided with another vehicle driven by Aldor Charles ("Charles"). Cooper was the sole authorized driver of the van and Mercury, Cooper's primary automobile insurer, was responsible for claims regarding the rental vehicle under the policy terms. Initially, Cooper told Mercury that Agatha Cooper was driving the van at the time of the accident but later, under oath, stated that his sister, Tanya Rolle, who was unlicensed, was the actual driver.
In June 2003, Charles made a claim to Mercury and demanded the $25,000 policy limit as an alternative to filing suit. Mercury then filed a declaratory judgment action to determine its rights and duties under the insurance policy. However, while the declaratory action was pending, Mercury decided to settle Charles' claim and pay him $2,500 as full settlement. Mercury did not negotiate a global settlement, which could have included a reservation of rights concerning attorney's fees. After settling with Charles, Mercury filed a voluntary dismissal of its declaratory judgment action. Cooper's counsel then filed a motion for attorney's fees under section 627.428(1), which was granted by the trial court.
After the trial court had granted the motion for attorney's fees, Mercury filed a motion for reconsideration on the ground that Cooper had been arrested for insurance fraud. The trial court held a hearing on the motion for reconsideration and denied the motion, citing to Florida cases holding that, where an insurance company settles a claim and dismisses a related declaratory judgment action, the provisions of section 627.428(1) are triggered, thus entitling the insured's counsel to attorney's fees under the statute.
Section 627.428(1) provides:
Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
§ 627.428(1), Fla. Stat. (2004). Florida courts have held that this attorney's fees statute is triggered where an insurance company settles a claim and voluntarily dismisses a related declaratory judgment action without qualifying or limiting the dismissal. Unterlack v. Westport Ins. Co., 901 So.2d 387 (Fla. 4th DCA 2005); O'Malley v. Nationwide Mut. Fire Ins. Co., 890 So.2d 1163 (Fla. 4th DCA 2004). In Unterlack, the Fourth District stated that it was irrelevant whether the settlement preceded the dismissal or vice-versa. Unterlack, 901 So.2d at 389. The Unterlack court held that the attorney's fees provision in section 627.428(1) is triggered when the voluntary dismissal of the declaratory judgment action and settlement are related to each other. Id.
Actual rendition of an order or decree is not required to trigger an insured's entitlement to attorney's fees under the statute. See Wollard v. Lloyd's & Cos. of *493 Lloyd's, 439 So.2d 217, 218 (Fla.1983). In interpreting the purpose of section 627.428, the Florida Supreme Court in Wollard reasoned that:
[T]he statutory obligation for attorney's fees cannot be avoided simply by paying the policy proceeds after suit is filed but before a judgment is actually entered because to so construe the statute would do violence to its purpose, which is to discourage litigation and encourage prompt disposition of valid insurance claims without litigation.
Id. Thus, the court held that the "payment of the claim is, indeed, the functional equivalent of a confession of judgment or verdict in favor of the insured." Id.
Under Florida law, it is the insurer's unilateral decision to settle an insurance claim and dismiss a related declaratory judgment action that triggers the insured's entitlement to attorney's fees under the statute. See id. In deciding to settle Charles' claim and later dismiss its declaratory judgment action, Mercury set in motion the events which make it legally responsible to pay its insured's attorney's fees under section 627.428(1).
Mercury could have avoided its liability under section 627.428(1) by simply refusing to settle the claim or by denying coverage under the policy. Even assuming that Mercury was intent on settling the claim for cost-efficient reasons, it could have negotiated a global settlement which included a reservation of rights concerning attorney's fees. Mercury did none of these things, despite being fully aware of Cooper's fraud.
Instead, Mercury chose the precise legal conduct which has been held, under Florida law, to trigger an insured's entitlement to attorney's fees under section 627.428(1). As such, Mercury is responsible for the outcome of this case. By deciding to settle the insurance claim and dismiss a related declaratory judgment action, irrespective of its merit or lack thereof, Mercury became legally responsible for the concomitant obligation to pay attorney's fees to its insured.
Nevertheless, Mercury seeks a judicially crafted exemption to section 627.428(1) in cases where there is insurance fraud. The dissent is apparently willing to craft such an exemption under the guise that the legislature surely could not have contemplated the application of section 627.428(1) to the facts of this case. Although that may or may not be the case, we believe that modification of the statute to address false statements by an insured is best left to the legislature. We prefer to follow the literal text of the statute and abide by more than two decades of Florida case law holding that section 627.428(1) is triggered upon an insurance settlement and a related dismissal of a declaratory judgment action.
While a judicially crafted exemption would certainly relieve Mercury of its attorney's fees obligation in this case, the dissent ignores the consequences of creating such an exemption. It would trade very clear rules governing the application of section 627.428(1) for much murkier ones. It would require trial and appellate courts to examine the merits of settled claims to determine the validity of those claims and perhaps even the insurer's rationale for settling the claims. We respectfully decline this invitation, preferring instead to hold Mercury responsible for its own actions.
Based on the holdings in Wollard, O'Malley, and Unterlack, we affirm the granting of attorney's fees under section 627.428 as there is no dispute that the settlement and the voluntary dismissal of the declaratory judgment action were related to each other.
Affirmed.
*494 WELLS, J. (specially concurring).
I agree that Mercury's voluntary dismissal of its declaratory judgment action entitles Cooper to a fee award and see no distinction between the instant fee award and those fee awards approved in Wollard v. Lloyd's & Cos. of Lloyd's, 439 So.2d 217 (Fla.1983), Unterlack v. Westport Ins. Co., 901 So.2d 387 (Fla. 4th DCA 2005), and O'Malley v. Nationwide Mut. Fire Ins. Co., 890 So.2d 1163 (Fla. 4th DCA 2004).
First, contrary to the dissent's suggestion otherwise, Unterlack and O'Malley are not distinguishable based on a lack of wrongdoing by the insureds in those cases because, from the facts given therein, it is not possible to discern the basis on which the insurers sought to avoid coverage. Moreover, Mercury alleged no fraud or wrong-doing on Cooper's part in its action for declaratory relief.[1] In any event, and as Wollard confirms, inappropriate behavior by an insured "has more bearing on the reasonableness of attorney's fees to be awarded rather than on the prevailing insured's entitlement thereto." Wollard, 439 So.2d at 219 (footnote omitted).[2] It is not, therefore, an insurer's reasons for seeking to avoid coverage that determines whether an insured is entitled to a section 627.428 fee award. Rather, it is the insurer's decision to satisfy the claim against its insured, thereby conceding coverage, which entitles an insured to a fee award.
Second, there are no significant "differences in an insurer's interests, motivations, and responsibilities" between first and third party claims that would justify application of the confession of judgment rationale to cases involving the former but, not the latter, as the dissent suggests. What the dissent characterizes as the concern of the Wollard court, that unscrupulous insurers would "misuse ... unequal skills and power ... to uncritically deny claims and then settle them or pay them before a judgment or decree was entered ... thus avoiding a fee award under section 627.428," is a concern equally applicable to first and third party claims. Because the potential for abuse is equally great in either case, there is no reason not to apply the policy determination made by the Florida Supreme Court in Wollard  that settlement or payment of a claim is "the functional equivalent of a confession of judgment"  to third party claims.
It is, of course, irksome to affirm an award of attorney's fees to an insured who concededly lied to his insurer, was charged with and arrested for insurance fraud, and paid restitution to his insurer. Nevertheless, this unpalatable outcome flows not from any infirmity in the law, but from Mercury's unilateral decision to settle a third party claim for a nominal sum ($2500 on a $25,000 policy limit demand) and to risk payment of fees incurred by Cooper during the early stages of these proceedings, rather than risking an unfavorable judgment declaring coverage with the accompanying payment of a substantially greater sum to the injured third party and Cooper's enhanced post-trial attorney's fees. While payment of fees to an insured now determined to have lied to his insurer is indeed lamentable, it provides no basis either for distinguishing Wollard, Unterlack, *495 and O'Malley or for engrafting a fraud exception into the law.
SHEPHERD, J., dissenting.
I respectfully dissent.
This case requires us to determine how far the Florida Supreme Court has unhinged the courts of this state from the long existing, but judicially trimmed requirement of section 627.428 of the Florida Statutes that there be an actual "rendition of a judgment or decree" against an insurer as a precondition of recovery of attorney fees by an insured under the statute.
The controversy arises out of the Florida Supreme Court's opinion in Wollard v. Lloyd's & Cos. of Lloyd's, 439 So.2d 217 (Fla.1983). In that case, the Florida Supreme Court was confronted with conflict jurisdiction in a passel of first-party insurance cases[3] in which insurers had for their own reasons delayed the payment of their contractual indemnification obligations to their insureds until such time as our system of justice was about to close on them, then paid or settled the claims at the eleventh hour to avoid the statutory fee.[4] Mindful of the legislative purpose of the statute "to discourage litigation and encourage the prompt disposition of valid insurance claims without litigation," see Wollard, 439 So.2d at 218 (quoting Gibson v. Walker, 380 So.2d 531, 533 (Fla. 5th DCA 1980)), the court overturned a decision of this court adhering to the plain language of the statute. Noting the Hobson's choice foisted upon the claimant Wollard by the transparently wiley act of his insurer  i.e., agree to an acceptable but nevertheless late-made offer to honor the policy or continue additional, unnecessary litigation to make himself wholethe Florida Supreme Court held that adhering to the "literal requirement of the statute exalts form over substance to the detriment of public policy." Wollard, 439 So.2d at 218. Accordingly, the court reasoned that the eleventh hour settlement was "the functional equivalent of a confession of judgment or verdict in favor of the insured" and that refusing the insured its attorney fees under the circumstances would violate "a basic tenet of statutory construction that statutes will not be interpreted so as to yield an absurd result." Id. at 218-19. But see id. at 219 (Alderman, J., dissenting)("As a matter of policy, I could agree with this result. I dissent because the express language of the statute appears to require a contrary result.").
More recently, our sister court to the immediate north has extended this principle in two cases involving third-party claims where coverage disputes are frequently more nuanced, but where the claims were likewise "valid claims." Unterlack v. Westport Ins. Co., 901 So.2d 387 (Fla. 4th DCA 2005); O'Malley v. Nationwide Mut. Fire Ins. Co., 890 So.2d 1163 *496 (Fla. 4th DCA 2004).[5] Today the majority seizes upon this authority, and extends it even further to order fees where the demand for coverage made by the insured is grounded in fraud. In my view, this decision is not mandated by higher authority as the majority would have us believe, and is contrary to the public policy which caused the Florida Supreme Court to unhinge us from the express language of the statute in the first place. A full recitation of the facts will explain.
In November 2002, Cooper rented a van from Freedom Rental Company. Cooper was insured under a policy of insurance issued by Mercury Insurance Company in which he declared he would be the sole driver of the vehicle. On November 24, 2002, the rental van collided with another vehicle driven by Aldor Charles. Cooper was not at the wheel. However, Cooper spun a different story to Mercury. By the time the dust settled, Cooper was arrested for insurance fraud, Mercury had incurred attorney fees arising out of Cooper's lies, and had entered into a nuisance settlement with Charles. For his trouble, Cooper nevertheless wants Mercury to pay his counsel's fees.
Cooper's cover up began on December 9, 2002. On that date, he advised Mercury that when the accident occurred, his relative, Agatha Cooper, was driving the van with Cooper and "a friend," Tanya Rolle, as passengers. Cooper stated that Agatha drove because she was transporting Cooper to the hospital for medical treatment. A police report, provided by Cooper, showed Tanya Rolle as the driver, but the name Agatha Cooper was written over Tanya's name. The same is true for the area of the report listing the name on the citation given for an improper right turn. On December 17, 2002, Mercury obtained Agatha's statement. Agatha confirmed Cooper's statement that she was the driver of the rental van at the time of the accident. However, she said that there was no one else in the van. Mercury allowed the matter to rest.
In June 2003, Aldor Charles made a claim to Mercury and demanded the $25,000 policy limit of the insurance policy in full settlement of his third-party claim. This prompted Mercury to reactivate its file and require Cooper to appear for an examination under oath as permitted by the policy. In his sworn statement, Cooper testified that he was not in the vehicle, but rather at work at the time of the accident. He further stated that he did not learn of the accident until the following morning, when he also found out that his sister, Tanya Rolle, was the driver of the vehicle. Investigation revealed that Tanya Rolle was unlicensed. Cooper testified he told the rental company that Agatha was driving the vehicle with him and Ms. Rolle as passengers "to protect himself." Cooper knew his coverage was in jeopardy if he was not at the wheel. See § 627.409(1), Fla. Stat. (2004)("A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under [a] contract or policy...."); Union Am. Ins. *497 Co. v. Fernandez, 603 So.2d 653 (Fla. 3d DCA 1992)(concluding that factual issue existed regarding whether insured misrepresented drivers of vehicle on application); Progressive Am. Ins. Co. v. Papasodero, 587 So.2d 500 (Fla. 2d DCA 1991)(material misrepresentation concerning drivers voided policy ab initio).
Confronted with suspicious conduct and a policy limits demand, Mercury elected to file a complaint for declaratory judgment to determine its rights and responsibilities. Cooper concedes in his brief, and the majority does not dispute, that this filing constituted a reservation of rights by Mercury as to coverage. See Allstate Ins. Co. v. Ginsberg, 863 So.2d 156, 157 (Fla.2003)(suggesting that Allstate reserved its rights by filing for declaratory judgment).[6] The defendants in the action were Cooper, Tanya Rolle, Freedom Rental Company, and Aldor Charles. Cooper filed a pro se answer to the declaratory judgment and thereafter retained counsel to represent him in the case. Charles' counsel, no doubt recognizing what Cooper knew, then precipitously dropped his settlement offer to $2,500.[7] On November 6, 2003, Mercury accepted this offer for reasons of economy, and sent Charles the settlement check in escrow with the usual form release eschewing admissions of liability. At the same time, Mercury advised Cooper's counsel of the deal. Cooper's counsel immediately countered with a motion to compel confirmation of settlement and a demand for a confession of judgment. A hearing on the motion was scheduled for December 2, 2003.
At the hearing, Mercury advised the trial court of the settlement. However, because an executed release had not been returned by Charles' counsel, the hearing was postponed. Two weeks later, on December 16, 2003, Mercury received the executed release, after which it voluntarily dismissed the declaratory judgment action without prejudice.
On January 9, 2004, Cooper renewed his quest for fees by filing a motion for entry of final judgment for fees and costs pursuant to section 627.428, Florida Statutes (2004). Cooper again argued that by paying Charles, Mercury had de facto confessed judgment. Mercury responded with its own motion, urging that because the dismissal of the declaratory judgment action was a voluntary dismissal, there was ipso facto no "confession of judgment," and that Mercury had every right to contest coverage in the declaratory judgment action because of Cooper's misconduct, including the delivery of an altered police report to *498 Mercury. On January 16, 2004, Cooper was arrested for fraud in connection with the November 24 accident, but this information was not divulged to the court by Cooper or his counsel.
On February 25, 2004, the trial court held a hearing on Cooper's motion for entry of final judgment. Without divulging Cooper's recent legal misfortune, Cooper's counsel continued to pursue its argument that once Mercury settled the Charles claim, it had confessed judgment, triggering the automatic fee entitlement. Mercury countered that it did not wrongfully deny Cooper's claim for coverage and a defense, but rather acted honorably by reactivating its file and then prosecuting the declaratory judgment action upon the introduction of the insurer-caused confusion into the case, and finally in making a nuisance settlement with Charles when the opportunity arose. Ultimately, the trial court sided with Cooper, concluding that Wollard was dispositive, but noting that Mercury had not presented sufficient record evidence of fraud by Cooper to vitiate his counsel's fee claim. The trial court therefore granted Cooper entitlement to attorney fees and ordered a subsequent hearing to determine amount.
On March 18, 2004, for the first time, Mercury was provided with irrefutable proof that the trial court felt it lacked. On that date, the Florida Department of Financial Services, Division of Insurance Fraud, informed Mercury that Cooper was arrested for providing false claims information to Mercury concerning the accident in question in violation of section 817.234(1), Florida Statutes (2004). In fact, prior to the February 25 hearing, and unbeknownst to Mercury, Cooper had been sentenced to probation and community service for his misdeeds, and ordered to pay Mercury $4,655 in restitution. At an April 20 hearing, the trial court nevertheless adhered to its prior ruling, this time finding that Wollard and its progeny tied its hands. However, the court was clearly distressed:
The Court: What I'm saying is I'm going to follow the law, but I don't think it's fair, and I'll tell you why because insurance companies have lots of reasons for settling, maybe it's a small claim, its not worth their time but if somebody lies to an insurance company why should the insurance company have to pay the liar's attorney[] fees just because they decided to settle another dispute that's not worth their time[?] Mr. Friend: They could have gone to trial, Judge.
The Court: You've established that. I don't think it's fair, that's what I'm telling you. You know, it's like the punitive damage statute, I don't like that statute personally, but that doesn't mean I'm not going to follow the law. All I'm saying is that I have a problem with your guy, he lies, and I have a problem compensating him but if the law tells me I have to, I will.
On April 29, 2004, the trial court awarded $32,872.62 in attorney fees to Cooper. A month later, the trial court supplemented this award with an additional $5,725 in fees and expert witness costs for litigating the amount of fees earlier awarded. Mercury contests both of these awards.[8]
*499 Mercury argues that an award of counsel fees incurred solely because of Cooper's fraud is "contrary to the purpose of section 627.428, Florida Statutes (2004)" and "leads to an absurd result." The argument should have a familiar ring. See Wollard, 439 So.2d at 218 ("[S]uch a result is clearly absurd."). I agree with Mercury. Like Mercury, I am confident that the legislature did not contemplate the application of the statute to the facts of this case. See, e.g., Pulmosan Safety Equip. Corp. v. Barnes, 752 So.2d 556, 558 (Fla.2000)(personal injury claims expressly barred by statute of repose nevertheless permitted because "[t]he legislature, no doubt, did not contemplate the application of this statute to the facts [of the case]"); Allstate Ins. Co. v. Conde, 595 So.2d 1005, 1007 n. 4 (Fla. 5th DCA 1992)("If the legislature did not contemplate some fact finding in declaratory actions, it is curious why section 86.071 provides that `a determination of an issue of fact' may be submitted to a jury.").[9] If anyone should pay the insured's attorney fees in this case, it should be the party who committed the fraud, Cletus Cooper.[10] For us not to put the burden squarely where it belongs condones the fraud.
Moreover, the result in this case is not legally compelled. The majority puts primary reliance in reaching its conclusion on O'Malley and Unterlack. In my mind, we are not required to slavishly follow this precedent. First, this authority is not binding on us. See Pardo v. State, 596 So.2d 665, 667 (Fla.1992)("as between District Courts of Appeal, a sister district's opinion is merely persuasive"). Second, unlike Wollard, which involved the settlement of first-party litigation, these cases rest on the rationale that the disposition by an insurer of third-party claims likewise constitutes "the functional equivalent of a confession of judgment." In my view, there are a sufficient range of differences in an insurer's interests, motivations, and responsibilities in the two types of claims that it is perilous to equate the two for the purposes of applying the "confession of judgment" rationale under section 627.428.[11] However, we need not reach *500 that issue because there is one final, insurmountable difference between the facts of O'Malley, Unterlack, and Wollard, and the instant case. All three of those cases, like those recited in note one above, inspired the Florida Supreme Court to discard the plain language of section 627.428 of the Florida Statutes in Wollard and involve bona fide, valid insurance claims. See Wollard, 439 So.2d at 218 (the purpose of 627.428 is to encourage the disposition of "valid insurance claims"). I am neither aware of nor have the parties cited any case which applies Wollard in the context of a fraudulently-made claim.
There is an obvious reason for this fact. Wollard was a response to the potential misuse by unscrupulous insurers of the unequal skills and power that usually obtain between them and their insureds to uncritically deny claims and then settle or pay them before a judgment or decree was entered against them in litigation, thus avoiding a fee award under section 627.428. Detecting a significant potential for abuse in this context, the court elected to disregard the plain language of section 627.428 and held as a matter of policy that such settlements or payments were "the functional equivalent of a confession of judgment" for purposes of section 627.428. Id. The court concluded that "[to do otherwise], would do violence to [the] purpose [of section 627.428], which is to discourage litigation and encourage the disposition of valid insurance claims without litigation". Id. Similarly, here, an award of fees for fraudulent conduct would do violence to the purpose of section 627.428.
Finally, it is worth reiterating that Wollard and its progeny, as well as the majority decision, are bottomed upon a legal fiction, that there was "the functional equivalent of a confession of judgment." As previously noted, this language is most applicable in first-party cases in which the insurer settles with or pays its own insured during the course of litigation. The analogy is hardly applicable in a case such as this where the insurer's motivation was to cut both its and its insured's financial losses. See id. at 219 n. 2 (the "threshold issue" in a section 627.428 [first party] fee case is "the requirement that the insurance company unreasonably withhold payment under the policy . . ."). I am therefore no more willing to force an insurer to continue to clog the courts with economically unnecessary litigation to preserve its coverage defenses against a miscreant insured than I am, in a post-Wollard world, to require an insured to unnecessarily continue to wage a first-party claim against his or her insurer to a judgment or decree for the sole reason of obtaining a statutory fee. See id. at 218 ("Requiring the plaintiff to continue litigation in spite of an unacceptable offer of settlement merely to avoid having to offset attorney's fees against compensation for the loss puts an unnecessary burden on the judicial system [and] fails to protect any interest  the insured's, the insurer's or the public's....").
In sum, we are blessed here with a case, and hopefully not the rare one, in which an insurer did everything right. I find no *501 authority or rationale for penalizing it under the laws of the State of Florida or applicable precedents. For these reasons, I would reverse the judgment of the trial court granting attorney fees to Cooper in this case.
NOTES
[1] The complaint for declaratory relief alleges that Mercury issued an automobile insurance policy to Cletus Cooper covering only Cooper and his wife; that an automobile leased to Cooper was involved in an accident; that neither the automobile nor the person driving it was covered by Mercury's policy at the time of the accident; and that, under these facts, Mercury was not obligated to provide either coverage or a defense.
[2] Mercury's only complaint in this regard related to the amount awarded to Cooper ($6,000) in recovering the fee.
[3] The Wollard court treated a conflict between a decision of this court, see Lloyd's & Cos. of Lloyd's v. Wollard, 420 So.2d 940 (Fla. 3d DCA 1982) decision quashed by Wollard v. Lloyd's & Cos. of Lloyd's, 439 So.2d 217 (Fla. 1983) and contrary decisions from each of our sister courts. Gibson v. Walker, 380 So.2d 531 (Fla. 5th DCA 1980); Smolder v. Ford Life Ins. Co., 361 So.2d 222 (Fla. 1st DCA 1978); Cincinnati Ins. Co. v. Palmer, 297 So.2d 96 (Fla. 4th DCA 1974); Employers' Liab. Assurance Corp. v. Royals Farm Supply, Inc., 186 So.2d 317 (Fla. 2d DCA 1966). All five of these cases are classic first-party cases in which an insured sued his own carrier to force it to respond on a policy issued by the carrier to its named insured. There is no indication in the opinions of fraudulent conduct by any plaintiff insured.
[4] The bad faith incentive for insurers to meet their contractual obligations to their insureds was still in its developmental stages in Florida when the Florida Supreme Court decided Wollard. See State Farm Mut. Auto. Ins. Co. v. LaForet, 658 So.2d 55, 58-60 (Fla.1995). Excess judgments for amounts above the policy limits were not recoverable in first-party bad faith actions until 1992. Id. at 61.
[5] The concurring opinion suggests that these two cases "are not distinguishable based upon lack of wrongdoing...." I disagree. In Unterlack, the issue in the underlying action was whether or not "the claims were [] covered under the terms of the ... policy." 901 So.2d at 388 (Emphasis added.). In O'Malley, the issue in the underlying declaratory judgment action was whether "there was a duty to defend or coverage" O'Malley, 890 So.2d at 1163 (emphasis added). Especially in the former case, I think it clear that the insurer was not urging insurance fraud as grounds for vitiating the claim. The description of the basis of the declaratory judgment action in the former case is more cursory, but I think consistent with a garden-variety coverage dispute. Neither the litigants nor any subsequent case have suggested otherwise.
[6] It is clear that Cooper has had no difficulty throughout this contretemps understanding Mercury's position vis-à-vis his demand for a defense and coverage. The majority nevertheless argues that Mercury owed Cooper more, if it desired to avoid liability for fees. It asserts that Mercury should have either: "[1] refus[ed] to settle the [Aldor Charles] claim[;] or [2] den[ied] coverage under the policy[;] or [3] negotiate[ed] a global settlement which included a reservation of rights concerning attorney's fees." Majority at 493. As to the latter two suggestions, it is hard to imagine what more Mercury could have said that Cooper did not already understand. The way that insurers contest coverage in confused situations is to defend under a reservation of rights. Moreover, I reject the planted axiom in the "global settlement" option that an insurer acting in good faith must seek, if not indeed obtain, the permission of the wrongdoer to preserve its rights. The refusal to settle suggestion is treated passim.
[7] The concurring opinion faults Mercury for not expressly accusing Cooper of fraud in the complaint. It is quite apparent that Charles, a non-party to the fraud, fully appreciated the gravity of the allegations and reacted swiftly thereto. If Charles' reaction is any guide, I doubt that anyone below misinterpreted the message.
[8] Although I conclude that Cooper's counsel is entitled to no reward, Mercury is entitled at a minimum to reversal of the additional $5,725 fee award for litigating the amount of fees. See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830 (Fla.1993)(while attorney fees may properly be awarded under section 627.428 for litigating the issue of entitlement to fees, attorney fees may not be awarded for litigating the amount of fees); Oruga Corp., Inc. v. AT & T Wireless of Fla., Inc., 712 So.2d 1141 (Fla. 3d DCA 1998)(attorney fee award made pursuant to offer of judgment statute may not include fees incurred for prosecution of the amount of attorney fees to which the party is entitled).
[9] If there is any doubt whether the legislature intended that attorney fees would be recoverable under section 627.428 for fraudulent claims made by an insured, one need only reflect again upon the legislative command that fees would be payable upon the "rendition of a judgment or decree ... against an insurer." § 627.428, Fla. Stat. I submit that it is the rare and sorry insurer who would stand still through a contested hearing or trial to the "rendition of a judgment or decree" in an insurance coverage case where its insured had defrauded it. It begs credulity to think that the legislature contemplated such fraud-based judgments when it adopted this section of the Florida Insurance Code.
[10] I must pause here to register my puzzlement at the majority's appropriation, majority at p. 493, of the principle of textualism, "We prefer to follow the literal text of the statute," to argue to the contrary. Application of the "literal text" of section 627.428, Florida Statutes in this case would, of course, command reversal. Similarly, given that the Florida legislature has once clearly spoken on the issue raised in this case only to be overridden by the Florida Supreme Court "[a]s a matter of [judicial] policy" see Wollard, 439 So.2d at 219 (Alderman, J., dissenting), I am amused by the call for the expenditure of further legislative energy on the issue. See Majority at p. 493 ("modification of the statute to address false statements by an insured is best left to the legislature").
[11] First-party claims are usually two-party cases involving a fairly straightforward dispute between the litigants. Third-party claims, by definition, include persons or entities who are strangers to the contractual relationship between the insured and the carrier. See, e.g., Aetna Cas. & Sur. Co. v. Bortz, 271 So.2d 108 (Fla. 1972)(construing third parties as strangers to contract); Tallahassee Title Co. v. Dean, 411 So.2d 204 (Fla. 1st DCA 1982)(accord). Because of the complicating factor of the introduction of non-parties to the insurance contract into these claims and the long ago, now well-developed body of bad faith jurisprudence relating to them, see Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938), insurers are more cautious in treating these claims. For example, insurers in a third-party case are less likely to simply deny coverage, but rather in the usual circumstance afford a defense under a reservation of rights. As recognized by the trial judge in this case, see p. 498 herein, they may also be more inclined to settle cases for a variety of reasons, ranging from economics to strategic, tactical, or liability considerations.